

1  MARK I. LABATON (CA Bar No. 159555)
   HILARY B. TAYLOR (CA Bar No. 203796)
2  **KREINDLER & KREINDLER LLP**
   707 Wilshire Boulevard
3  Suite 5070
   Los Angeles, CA 90017
4  Telephone:  (213) 622-6469
   Facsimile:   (213) 622-6019
5
   JEFFREY P. FLEITMAN (CA Bar No.169193)
6  **LAW OFFICES OF JEFFREY P. FLEITMAN**
   9024 W. Olympic Boulevard
7  Suite 202
   Beverly Hills, CA 90211
8  Telephone:  (310) 399-2889
   Facsimile:   (310) 858-9773
9

10  Attorneys for Relator

11

12              UNITED STATES DISTRICT COURT

13       FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                  WESTERN DIVISION

15  UNITED STATES OF AMERICA,        CV-06-4347-GPS
                                     (JWJx)
16                                   ) Civil Case Number:
17                    Plaintiff,     ) COMPLAINT FOR VIOLATION OF
                                     ) FEDERAL FALSE CLAIMS ACT
18                                   )
    v.                               ) JURY TRIAL DEMANDED
19                                   ) **FILED UNDER SEAL**
                                     ) **PURSUANT TO THE FALSE**
20  [Under Seal],                    ) **CLAIMS ACT [31 U.S.C. § 3729 et**
                                     ) **seq.]**
21                    Defendants.    )
22                                   )
23  _____ )

24

25

26          DOCKETED ON CM
            JUL 18 2006
27
    BY                  019
28

187745.2

                COMPLAINT FOR FALSE CLAIMS

MARK I. LABATON (CA Bar No. 159555)
HILARY B. TAYLOR (CA Bar No. 203796)
**KREINDLER & KREINDLER LLP**
707 Wilshire Boulevard
Suite 5070
Los Angeles, CA 90017
Telephone:  (213) 622-6469
Facsimile:   (213) 622-6019

JEFFREY P. FLEITMAN (CA Bar No.169193)
**LAW OFFICES OF JEFFREY P. FLEITMAN**
9024 W. Olympic Boulevard
Suite 202
Beverly Hills, CA 90211
Telephone:  (310) 399-2889
Facsimile:   (310) 858-9773

Attorneys for Relator

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISIOIN

| | |
|---|---|
| UNITED STATES OF AMERICA, <u>ex rel</u>. RONALD BELL,<br><br>Plaintiff,<br><br>v.<br><br>Bell Helicopter TEXTRON INC., and TEXTRON INC.,<br><br>Defendants. | Civil Case Number:<br><br>COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT<br><br>JURY TRIAL DEMANDED<br><br>**FILED UNDER SEAL PURSUANT TO THE FALSE CLAIMS ACT [31 U.S.C. § 3729 et seq.]** |

Relator/Plaintiff, Ronald Bell, reserves the right to make additional allegations and claims as he uncovers additional evidence.  Based on personal knowledge and information and belief, he alleges as follows:

## SUMMARY OF THE ACTION

1.     Ronald Bell (the "Relator") brings this action on behalf of the United States of America to recover damages, civil penalties, and other relief arising from false claims and false statements that Defendant Bell Helicopter Textron Inc. ("Bell Helicopter" or the "Company") made in violation of the Federal False Claims Act ("FCA"). Congress enacted the FCA in 1863 to combat war profiteering, and last amended it in 1986 to increase incentives for whistleblowers to come forward and to stem pervasive fraud.

2.     This action arises from false claims, certifications, contract proposals, costs reports, progress payments reports, and other documents and false statements including the Company's: a) submission of fraudulent proposals for government contracts based on the Company's knowledge of what it expected the government would pay, rather than what it believed would be the actual costs; b) false representations to having built certain prototypes to procure government contracts; c) shifting of labor hours and costs from a "fixed-fee" capped contract to a "cost-plus reimbursement" uncapped contract to purloining more than $24 million in government funds; and d) alteration of Company journals to facilitate fraudulent charges. Based on such conduct, Bell Helicopter and its parent company, Textron, Inc., are liable to the United States for penalties and damages arising from knowing, deliberately ignorant, or reckless submissions of false claims and false statements to obtain more than $1 billion in federal funds. These Defendants also are liable to the Relator for the retaliatory actions the Company took after he refused to take part in Bell Helicopter's fraudulent conduct.

## THE PARTIES

3.     Ron Bell, the Relator, is a resident of Los Angeles, California. He is an aeronautical engineer, who has worked on military contracts for several private companies during the past twenty-five years. He joined Bell Helicopter in May of 1996, and continued to work for the Company until May 2006, when he

1  voluntarily left the Company to take a job with another defense contractor. From
2  March 2005 to April 2006, he served as Air Vehicle Director and Chief Engineer
3  for Bell Helicopter's H-1 and V-22 programs, where his duties included
4  supervising approximately 200 engineers as well as additional administrative
5  employees. He reported to the Program Director of Bell Helicopter's H-1
6  Program, who reported to the Company's Senior President for Government
7  Contracts and to the Chief Operating Officer. Prior to joining Bell Helicopter,
8  Relator was a consultant to the United States Special Operations Command, and
9  before that had served in the United States Air Force for 21 years. The Relator
10  worked for another defense contractor for approximately 15 years.

11      4.      Defendant Bell Helicopter is incorporated in Delaware, maintains its
12  headquarters in Fort Worth, Texas, and regularly conducts business throughout the
13  United States, including the Central District of California. The Company is a
14  subsidiary of Textron, Inc.

15      5.      Defendant Textron, Inc. is incorporated in Delaware, maintains its
16  headquarters in Providence, Rhode Island, and regularly conducts business
17  throughout the United States, including the Central District of California.

18                          **JURISDICTION AND VENUE**

19      6.      This Court has subject matter jurisdiction pursuant to 31 U.S.C. §
20  1331 and 31 U.S.C. § 3732, which confer jurisdiction on this Court for actions
21  brought under 31 U.S.C. §§ 3729 and 3730.

22      7.      This Court has jurisdiction over the Defendants pursuant to 31 U.S.C.
23  § 3732(a), which authorizes nation-wide service of process. Moreover, defendants
24  transact business in this district.

25      8.      Venue is proper in this district pursuant to 31 U.S.C. § 3732(a)
26  because the Defendants can be found in, reside in, and/or transact business in the
27  Central District of California. Defendants are registered to do business in
28  California, and have a process agent in this district.

## SUBSTANTIVE ALLEGATIONS

**THE H-1, "HUEY," HELICOPTER "UPGRADES" CONTRACT**

9.     Since the 1960s, Bell Helicopter designed, manufactured, and sold helicopters to the United States Marine Corps. The Company's most famous helicopter fleet is the United States Marine Corps H-1 "Huey" series, which includes a utility helicopter, the UH-1, and an attack helicopter, the AH-1, or "Cobra," both first used in the early 1960s during the Vietnam War.

10.     In the early 1990s, the Marine Corps wanted to improve its Hueys by adding a four-blade rotor system and glass cockpit and by improving their airframes. At the time, Bell Helicopter was having problems fulfilling its only large federal contract — to build the V-22 Osprey Tiltrotor aircraft helicopters — and the Company believed that securing a contract to improve the Hueys was critical to its future.

11.     In 1996, the Marine Corps invited the Company to submit a proposal to "upgrade" the attack and utility H-1s. This contract would not be competitively bid — instead, if Bell Helicopter submitted a proposal within the Marine Corps specifications and budget, it could win the contract. The contract was to be a "cost-plus reimbursement" one: that is, the federal government agreed to reimburse all costs, though as a bidder Bell Helicopter was obligated to provide careful and honest estimates of its projected costs and budgets prior to, and as a condition to, its being awarded any contracts. Pursuant to the Truth in Negotiations Act ("TINA"), federal government contractors must submit accurate cost and pricing information, particularly in non-competitive contracts, where the government depends on a single proposal to award contracts for millions, or even billions, of dollars. Bell Helicopter did not do so here.

12.     Based on the Marine Corp's requirements, Bell Helicopter estimated that it would cost the Company approximately $1 billion to satisfy the terms of this contract. But before submitting its bid, the Company learned from a high-

1   level government official that it would only get the contract if it bid less than $500

2   million.  Consequently, the Company doctored its internal estimates, and on or

3   about August 1996, submitted a bid of $497 million; it structured its bid to fit

4   within the parameters of what it knew the government would accept rather than

5   what it believed to be its true costs; and, in so doing it, severely and haphazardly

6   cut its "internal" cost estimates for engineering hours, labor costs, and material

7   costs.  Despite its representations, the Company had not even begun ramping up

8   for the project, and had also falsely represented that it had already selected a

9   subcontractor to develop the Target Sight System for the helicopters.  The

10   Company knew, however, that it had to manufacture that costly system from

11   scratch, and that many of the component parts were obsolete or soon would be

12   obsolete.

13        13.    In October 1996, the United States Marine Corps awarded the

14   Company this "cost plus reimbursement" contract based on the false pricing and

15   costs data that the Company provided.  The contract is called Engineering,

16   Manufacturing and Development Contract No. N00019-96-C-0128 (the "H-1

17   Upgrades Program Contract").

18        14.    Bell Helicopter submitted false information to procure this contract

19   because: a) it desperately wanted the contract; b) the contract was a "cost plus

20   reimbursement" one, so the Company would be reimbursed even if it exceeded its

21   $497 million estimate;  c) the government does not often abandon military

22   contracts mid-stream; and d) the Company viewed the contract as a prelude to

23   lucrative "initial production" and later large-scale production contracts for fleets

24   of the "upgraded" H-1 helicopters — in many ways, the Company believed its

25   future rested on getting this contract.

26        15.    The Company's assessment that it could obtain payments exceeding

27   the initial bid and that the contract would lead to production contracts proved

28   correct: so far, Bell Helicopter has obtained more than $1 billion from the

"upgrades" contract, which has not yet been completed, and it has already been awarded a $207 million "initial production" contract.

## RE-AUTHORIZATION FOR THE H-1 UPGRADES CONTRACT NO. N00019-96-C-0128 FOLLOWING THE NUNN-MCCURDY BREACH

16.     A Nunn-McCurdy breach of contract occurs when a government contractor exceeds its budget by 25%. Defense contracting legislation, referred to as the Nunn-McCurdy Amendment, requires the Defense Department and Congress to review the need and viability of all weapons programs whose costs exceed their original estimates by 25%.

17.     By 2002, Bell Helicopter's costs on the H-1 Upgrades Program Contract exceeded its originally estimated costs of $497 million by more than 25%. Because of this breach, in April 2002, the Defense Acquisition Board convened to determine the viability of the H-1 Upgrades Program Contract, and the Defense Department ordered the Company to provide accurate cost and pricing information estimating the cost to complete the H-1 Upgrades Program Contract. But fearing that the government would terminate the contract, the Company again intentionally submitted false cost and pricing data. This time its internal estimate of the cost of completing the contract exceeded the estimate it submitted to the government by $200 million. Contemporaneous internal correspondence and memoranda reveal that Bell Helicopter continued to view this contract as critical to its survival.

18.     Based, in part, on Bell Helicopter's false statements, the Defense Department recommended continuing the H-1 Upgrades Program Contract, and Congress authorized continued funding for it, which was necessary because of the Nunn-McCurdy breach.

19.     Following these decisions, but apparently based in part on the false statements made by Bell Helicopter officials, the Company's H-1 Program

Director, at the time, and the then H-1 Program Deputy Director resigned from the Company.

**THE "LOW RATE INITIAL PRODUCTION" CONTRACT**

20.     On or about October 30, 2003, the United States and Bell Helicopter entered into a "fixed price" contract requiring Bell Helicopter to begin producing six "upgraded" Huey helicopters and three AH-1 Cobra Helicopters at a firm, "fixed" price of $207 million.

21.     Because this was a "fixed price" contract, Bell Helicopter would profit if its costs were less than $207 million in violation of the Federal Acquisition Regulations, but would sustain a loss to the extent that its cost exceeded that amount.  The Federal Acquisition Regulations specify how contractors assign, accumulate, allocate, measure, and otherwise account for the costs they incur in performing contracts with the United States.  These regulations also specify costs that the government will and will not reimburse.

22.     When it became clear that it could not complete the contract for less than the "fixed price" of $207 million, the Company charged more than $24 million of its costs and shifted tens of thousands of hours of billing time from the "fixed price" production contract to the "the cost plus reimbursement" H-1 Upgrades Program Contract.

23.     Preceding this fraud, John Fuller, then the H-1 Program Director, told various Bell Helicopter managers that because Bell Helicopter was losing money on the "fixed price" contract, the Company would charge certain work that it had a duty to perform under that "fixed price" contract to the H-1 Upgrades Program Contract, a "cost plus reimbursement" contract for which there was no fixed price cap.

24.     To foster this fraud, Luanne George, a subordinate of Mr. Fuller, altered Company books and records and created false entities to support false

1  billing invoices; under Mr. Fuller's direction, Company employees also falsely

2  charged tens of thousands of hours of engineering labor to the "cost plus

3  reimbursement" contract.

4  **ARMED RECONNAISSANCE HELICOPTERS' CONTRACT**

5      25.    In July 2005, the United States Army awarded Bell Helicopter a

6  $210.7 million contract to build and design several armed reconnaissance

7  helicopters.

8      26.    Prior to this contract award, two Bell Helicopter employees obtained

9  proprietary information from a competitor, which the Company then used it

10  making its bid.   At the same time, the Company made additional false

11  representations to obtain the contract.  For example, knowing the Army wanted the

12  contract completed within eight months, Bell Helicopter falsely represented that it

13  already had a "prototype" of the armed reconnaissance helicopter, and had

14  developed "off the shelf," ready to immediately use avionics, electronics, and rotor

15  systems.  In fact, the Company did not have a prototype; nor had it developed

16  these systems.

17      27.    Lacking a genuine prototype, Bell Helicopter used a Commercial 407

18  Helicopter, which it "dressed up" (i.e. disguised) and falsely represented to be the

19  "prototype."  The Company used this commercial helicopter as a false facade —

20  pretending it was the prototype and playing a shell game whereby it moved this

21  fake "prototype" from job site to job site to deceive government officials and

22  inspectors into believing that the Company had performed significant work.

23  Additionally, these helicopters still lack sufficient engine power to fly in combat.

24  **THE COAST GUARD MODERNIZATION AND PRESIDENTIAL**
    **HELICOPTER CONTRACTS**

25      28.    In 2003, Bell Helicopter received a subcontract as part of the Coast

26  Guard Modernization Deep Water Program to build an unmanned vehicle.  Bell

27  Helicopter falsely represented in its contract proposal that it had a prototype for

28

this vehicle.  Similarly, in 2005, Bell Helicopter falsely represented in its bid proposal to obtain a subcontract to build the airframe for the United States Navy's Presidential Helicopters, the VH-71, that it had the capability to perform that task.

**THE RELATOR'S DEMOTION FOR FAILING TO CERTIFY FALSE COST ESTIMATES**

29.    In early March 2006, Mr. Fuller, still the Company's H-1 Program Director, and Matthew Krompass, its Deputy H-1 Program Director, asked the Relator for new labor estimates to complete work on pending H-1 helicopter contracts.  Presumably, these figures would be incorporated in certifications, work progress reports, and other required documents periodically forwarded to the government based on contractual and funding requirements.

30.    Subsequently, Mr. Fuller and Mr. Krompass told the Relator that the estimates he prepared overstated the required projected costs and labor.  Without doing any research of their own, Mr. Fuller and Mr. Krompass randomly reduced the labor and costs listed in the projected estimates, in most cases simply by crossing out calculations the Relator had made after carefully assessing the contractual requirements and plugging in estimates many times lower.  They then ordered the Relator to confirm that the numbers they randomly inserted accurately estimated future costs.  When the Relator hesitated, Mr. Fuller told him that he might be fired if he did not ratify these fraudulent numbers.  The Relator, however, agreed to review his figures even though he believed that Mr. Fuller was pressuring him to confirm false estimates to conceal false prior billings and to facilitate future false charges.

31.    A few days later after reviewing his estimates and speaking to Company employees who reported to him, the Relator confirmed the accuracy of his estimates and confirmed his view that the numbers that Mr. Fuller wanted him to attest to grossly understated the costs and labor requirements for future work.  Following this investigation, the Relator again informed his superiors that he

1   could not support their numbers.  Thereafter, on March 10, 2006, Mr. Fuller told

2   the Relator that he would be demoted, losing his supervisory rank as Bell

3   Helicopter's H-1 Air Vehicle Director, and would no longer be eligible to receive

4   incentive bonuses.  In addition, the Company then transferred the Relator to a new

5   work facility, also in Texas, but several hundred miles away from where he had

6   lived and worked.  Ironically, on March 10, 2006, the day he was demoted for

7   failing to sign false certification statements, the Relator received a $22,300 bonus

8   from Bell Helicopter for his work in 2005 (his annual salary had been

9   approximately $165,000), and the Company sent him a letter commending his job

10  performance.

11          32.     Although in retaliating against the Relator for refusing to participate

12  in fraud the Company failed to follow its internal procedures relating to transfers

13  and demotions, the Relator accepted the transfer, and soon applied for work with

14  other contractors.  Because of his reputation, he immediately received interview

15  offers.  By May 2006, after resigning from Bell Helicopter, where he worked for

16  approximately 10 years and had steadily moved his way up the Company ladder,

17  he took a new executive job for another defense contractor in Los Angeles.

18                                  **COUNT ONE**

19                   **(False Claims Act, 31. U.S.C. § 3729(a)(1)**

20                          **(Against All Defendants)**

21          33.     The Relator realleges and incorporates by reference all paragraphs set

22  forth herein.

23          34.     By virtue of the acts described above, Bell Helicopter knowingly or

24  acting in deliberate ignorance or reckless disregard presented or caused to be

25  presented to the United States false or fraudulent claims for payment or approval

26  in violation of the FCA.

27          35.     Because of these acts, the United States has suffered damages.

28

**COUNT TWO**

**(False Claims Act, 31. U.S.C. § 3729(a)(2)**

**(Against All Defendants)**

36.   The Relator realleges and incorporates by reference all paragraphs set forth herein.

37.   By virtue of the acts described above, Bell Helicopter knowingly or acting in deliberate ignorance or reckless disregard made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States in violation of the FCA.

38.   Because of these acts, the United States has suffered damages.

**COUNT THREE**

**(False Claims Act, 31. U.S.C. § 3729(a)(3)**

**(Against All Defendants)**

39.   The Relator realleges and incorporates by reference all paragraphs set forth herein.

40.   By virtue of the acts described above, Bell Helicopter conspired to defraud the United States by getting a false or fraudulent claim allowed or paid in violation of the FCA.

41.   Because of these acts, the United States has suffered damages.

**COUNT FOUR**

**(Common Law Fraud)**

**(Against All Defendants)**

42.   The Relator realleges and incorporates by reference all paragraphs set forth herein.

43.   The false records or statements made by defendants, as described above, were misrepresented and concealed material facts.

44.   Bell Helicopter knowingly and/or in reckless disregard of the truth misrepresented and concealed material facts.

187745.2
COMPLAINT FOR FALSE CLAIMS

45.    Bell Helicopter made these misrepresentations of material fact or failed to disclose material facts intending that the United States would rely on their accuracy in evaluating Bell Helicopter's contract proposal, in granting the contract, and in paying their claims in connection with the contract award.

46.    The United States justifiably relied on Bell Helicopter's false and misleading representations in evaluating Bell Helicopter's contract applications, in granting their contract award, and in paying their claims in connection with this contract.

47.    Bell Helicopter defrauded the United States.

48.    Bell Helicopter's has caused the United States to suffer damages.

## COUNT FIVE

### (Unjust Enrichment)

### (Against All Defendants)

49.    The Relator realleges and incorporates by reference all paragraphs set forth herein.

50.    The United States paid Bell Helicopter monies for which the United States received no benefit and to which it was not entitled.

51.    By reason of these payments, Bell Helicopter has been unjustly enriched at the expense of the United States.

52.    The United States is entitled to the amount of the Bell Helicopter's unjust enrichment as damages.

## COUNT SIX

### (Payment Under Mistake of Fact)

### (Against All Defendants)

53.    The Relator realleges and incorporates by reference all paragraphs set forth herein.

54.     The United States paid or approved the claims submitted by defendants under the erroneous belief that the statements defendants made in their contract proposal and contract claims at issue were truthful.

55.     The United States' erroneous beliefs were material to the amount of money the United States paid for Bell Helicopter's claims for the contract award.

56.     Because of these mistakes of fact, Bell Helicopter received money to which they were not entitled.

57.     By reason of the overpayments described above, the United States is entitled to damages in the amount of overpayment.

**COUNT SEVEN**

**(Truth in Negotiations Act 10 U.S.C.A. § 2306a)**

**(Against All Defendants)**

58.     Relator realleges and incorporates by reference all paragraphs set forth herein.

59.     The false records or statements made by Bell Helicopter, as described above, involved cost and/or pricing data.

60.     The false records or statements made by Bell Helicopter misrepresented or concealed material fact.

61.     The United States justifiably relied on Defendants' false and misleading and defective data in evaluating Bell Helicopter's contract applications, in granting their contract award, and in paying their claims.

62.     By virtue of these acts, Bell Helicopter caused false and inaccurate cost and pricing data to be presented to plaintiff United States in the course of negotiation of a contract in violation of the TINA.

63.     Defendant, Bell Helicopter, caused the United States to suffer damages.

# COUNT EIGHT

## (False Claims Act, 31. U.S.C. § 3730(h))

## (Against All Defendants)

64.     The Relator realleges and incorporates by reference all paragraphs set forth herein.

65.     Bell Helicopter's conduct, including but not limited to his demotion from the executive and incentive compensation ranks was retaliation against him for failing to participate in the scheme to defraud the United States.

66.     The Relator is entitled to damages as set forth in 31 U.S.C. §3730(h).

WHEREFORE, RELATOR DEMANDS JUDGEMENT AGAINST DEFENDANTS AS FOLLOWS:

A.     On Counts One, Two and Three, judgment against Defendants for treble the damages sustained by the United States, plus civil monetary penalties for false claims and statements as allowable by law;

B.     On Counts Four, Five and Six judgment against Defendants for the damages sustained by the United States;

C.     On Count Seven, judgment against Defendants for the damages sustained by the United States

D.     On Count Eight judgment against Defendants for the damages sustained by Relator, Ron Bell;

E.     The Relator respectfully request leave of the Court to amend the Complaint when the amount of damages has been fully ascertained or to amend the Complaint to conform to proof at or prior to trial;

F.     For costs, fees, and other relief as may be must and proper;

G.     For a ten percent (10%) surcharge in the amount of the debt owed pursuant to 28 U.S.C. § 3011.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure and pursuant to the local rules of Court, the Relator demands a jury trial as to all issues so triable.

Dated: July 7, 2006

Respectfully submitted by:

KREINDLER & KREINDLER LLP

MARK I. LABATON
HILARY B. TAYLOR

LAW OFFICES OF JEFFREY P. FLEITMAN

JEFFREY P. FLEITMAN

- 15 -
COMPLAINT FOR FALSE CLAIMS

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA ex rel. [Under Seal] | [Under Seal] |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
|---|---|
| Los Angeles | |

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Mark I. Labaton (SBN 159555) KREINDLER & KREINDLER LLP 707 Wilshire Boulevard, Suite 5070 Telephone (213) 622-6469; Facsimile (213) 622-6019 mlabaton@kreindler.com | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No  ☐ **MONEY DEMANDED IN COMPLAINT: $** 0

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
31 U.S.C. 3729 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS | TORTS | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | PERSONAL INJURY | PERSONAL PROPERTY | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 310 Airplane | ☐ 370 Other Fraud | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**  Case Number:

CV-71 (07/05)  **CIVIL COVER SHEET**  Page 1 of 2

 CV-06-4347  GPS

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No   ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
            ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
            ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
            ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☑ Check here if the U.S. government, its agencies or employees is a named plaintiff.
   Los Angeles

List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
   Texas, Rhode Island

**List the California County,** or  State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.
   Texas / Federal

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_                     Date _____ July 11, 2006

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George P. Schiavelli and the assigned discovery Magistrate Judge is Jeffrey W. Johnson.

The case number on all documents filed with the Court should read as follows:

## CV06- 4347 GPS (JWJx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.